UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

United States of America      :      19-14035-CR-ROSENBERG

v.

Gary Hendry                   :      December 10, 2019

### Defendant's Reply Memorandum

The Government's sentencing memorandum invites a brief reply.

For the many years that the Sentencing Guidelines were mandatory prescriptions—with the Government effectively determining a defendant's sentencing range via the indictment—federal judges were constrained to make sentencing decisions that conformed to numerical criteria.[1]

The wisdom of a system that reduced criminal sentencing to an algorithm was widely criticized by judges, academics, and practitioners alike. It took time but, in a series of decisions well-known to this Court, the Supreme Court hearkened the return of the federal judicial tradition of considering every convicted person as an individual and every case as a unique case study in human failings.

---

[1] Without belaboring the point, the "guidelines fetish with abstract arithmetic" often endorses inconsistent results. In cases governed by 2L1.1, for example, the Guidelines' call for increases of 3, 6, or 9 levels based on the number of aliens involved with the added proviso that an upward departure may be warranted in cases involving substantially more than 100 aliens. Are 180 aliens "substantially more than" 100 aliens? The Ninth Circuit said "no" because these enhancements rely on a geometric exponential of four. U.S. v. Nagra, 147 F.3d 875. Thus, smuggling, transporting or harboring as many as 399 aliens warrants a 9-level enhancement. In contrast, a 6-level enhancement applies here because the offense involved more than 25 aliens but fewer than 100. Is any of this a reliable barometer of a defendant's moral blameworthiness? Is this enhancement based on any empirical evidence or special expertise or is it arbitrary?

To this end, defendant's main memorandum endeavors to assist the Court in its assessment of Gary Henry's failings by laying out what he did and why he did it in the context of the particular crime he committed, an absolutely non-violent, offense.

Necessarily this involves a discussion of the non-heartland nature of the offense, the personal characteristics of the offender, deterrence, and the fact that the Government filed a departure motion on Mr. Hendry's behalf.[2] The Court, of course, is free to weigh these factors and consider these suggestions as it sees fit.

In contrast, the Government essentially argues that the (advisory) Guidelines should dictate Mr. Hendry's sentence. In the Government's view, the constellation of positive attributes and mitigating factors before the Court are dwarfed by a single consideration—incarceration.

In this vein, the Government acknowledges that Mr. Hendry's criminal history is "minimal" (p. 8), but suggests that the fact that he has never before been in trouble has been adequately taken into consideration by virtue of his Criminal History Category I designation.

The Sentencing Commission, however, takes a broader view. The Commission notes that "first offenders are less culpable than other offenders," and that sentencing reductions for "first offenders" are supported by their lower reoffending rates.[3] Moreover, Congress has recognized "the general appropriateness of imposing a sentence other than imprisonment "for first offenders not convicted of a crime of violence or similarly serious offense."[4]

---

[2] Notably, no such motion was filed on behalf of codefendant Dennis Birdsall who the Court sentenced, principally, to nine months' house arrest.

[3] U.S.S.C. *Recidivism and the First Offender*, at 9 (Release 2, May 2004). Moreover, the Sentencing Commission has determined that criminal history points better forecast the risks of re-offending than the criminal history category. *Id* at 13–14.

[4] *See* 28 U.S.C § 994(j). The instant offense, though serious, is not "similarly serious" to a crime of violence.

Thus, the fact that this defendant has no criminal history in his 50+ years of living has an importance in sentencing beyond its placement on the Guidelines' horizontal grid.

The Government's sentencing argument redounds to a single proposition: Gary Hendry should not be credited or rewarded for doing what is expected of a good citizen; not having a criminal history; being charitable and community-minded; and being a person of good character. Rather, he should be punished, and punished severely, for doing what he admittedly should not have.

Gary Hendry should be rewarded for being a good person. Unlike the Government's position, it is regrettably submitted that his punishment should not ignore the life he has led and the kind of person he is. Over decades Gary Hendry gave selflessly to others in need, whether from national disasters or hardships of their own making, he was not doing so to gather credits for use at his sentencing 10, 20, or 25 years later. That is just who he is, and who he is, is critically important in determining his punishment.

As important as it is for others to know that violations of federal law will be appropriately sanctioned, it is just as important for others to be encouraged to do good deeds and to live good; productive and community-minded lives and to know that character matters.

Irrespective of what Gary Henry does in the future, for the rest of his life he will be a convicted felon. As former President Bush recognized when he commuted Louis ("Scooter") Libby's perjury and obstruction sentence from 30 months to probation, "the consequences of his felony conviction will be long-lasting" and "harsh."[5] The consequences of a felony conviction will be no less harsh for Gary Hendry as well as multiple other collateral disastrous consequences to be more fully argued at sentencing.

---

[5] *See* White House Office of Press Secretary, "Statement by the President on Executive Clemency for Lewis Libby," July 2, 2007 (http://georhewbush-whitehouse.archives.gov/news/releases/2007/07/20070702-3.html) (regarding United States v. Libby, Dist. Ct. No. 1:05-CR-00394RBW-1 (D. D.C. 2007)).

3

In conclusion, it bears emphasis that home confinement is not an act of leniency. It is not an act of forgiveness and it is not an endorsement of the offense.[6]  Along with the other multiple punishments sustained by Gary Hendry, is just and maintains respects for the Federal Justice System.

Gary Hendry

By *[signature: David Roth]*
David Roth, Esq
515 N. Flagler Drive, Suite 325
West Palm Beach, FL 33401
droth@rothduncan.com
Phone: 561-655-5529

Certification of Service

I hereby certify that the foregoing Reply Memorandum was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

By *[signature: David Roth]*
David Roth, Esq.

---

[6] See P. Hoffer & B. Meierhoefer, *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System* (Federal Judicial Center, 1987).